We'll begin argument in McRae v. New York State Thruway Authority. Judge Walker, can you hear us? Absolutely. Good morning. Good morning. Good morning, Your Honors. May it please the Court, I'd like to reserve two minutes for rebuttal. That's fine, Mr. Donovan. Thank you, Your Honor. My name is Ryan Donovan, and I represent the appellants in this matter. Carol McRae, Lori Bucci, Ann Currier, Paul Provost, Kathleen Lacy, John Mecca, and all similarly situated prospective class members, which make up the Management and Confidential Employees of the New York State Thruway Authority as of July 1, 2008. This appeal was brought as a result of an order from the District Court of the Northern District of New York dismissing this complaint pursuant to 12B6, a motion brought by the defendants and appellee in this matter. The district court erred in failing to address the property right which was earned by the MC employees by the services they rendered in 2008, 9, 10, and 11. A constitutionally protected property right has been pled appropriately in the complaint. And as I'm sure the court is aware, the issue before the court here is the complaint sufficient. Were sufficient facts alleged that creates plausibility of a relief for which relief can be granted, of a claim for which relief can be granted, I apologize. So would you, I guess, explain to me why it is when the Thruway Authority can have these various policy, not policy, which it sets out in terms of what it is hoping to do, why, and those change, and it has the right to change them, that your clients thus have something in which they claim a property interest that needs to be protected. Thank you. That's right where I was going. Thank you. That's exactly right. I don't challenge the authority or the municipality's ability to change their mind at some point in time. But once those wages were earned, they became the constitutionally protected property of the MC employees. And, Your Honor, if I may, I have four events which created this property right. Excuse me. Excuse me. Yes, Judge. You say they were earned, but that depends upon whether, the thrust of your argument is, in effect, that the increases were there, they were put in place, and that payment was deferred, not the increases. Isn't that your argument? Isn't that the crux of this case? Absolutely, Your Honor. You're correct. Okay. Okay. But that's, there may be an ambiguity about that. Did the person, was the choice of the word payment deferred in effect saying the increases were deferred, which I don't think you would quarrel with. They have the ability to do. And that's a question. I mean, you know, you've got two words here. You've got deferred and you've got payment. So you don't have the increases are withheld. That would be clearer. You don't have the increases are deferred, which would cut perhaps against you. You have, in effect here, the increase, the payment is deferred, not that the payments are withheld. So this is all sort of language, two words, really. I completely agree, Your Honor. I'm sorry. Were you done, sir? No, I am. I am done. I completely agree with Your Honor. And I think the allegations are sufficient to get us through the 12B6 motion. I believe what Your Honor just articulated is the question of fact that we deserve to go through discovery and investigate. But in the complaint, it is alleged that the board and the executive director wanted to pay these increases. They did not rescind them. They did not freeze them. They did not cancel them. They just merely authorized the executive director to defer payment of. So each and every day of those pay periods, the salary increase was told, this is what you're going to get paid. They earned and labored and rendered services in exchange for that salary. And only the payment of the increase was deferred, not the increase itself. That language was chosen by a very sophisticated board with the advice of counsel. I believe that language was intentional. Is that what you're seeking discovery on, to be able to depose the board and find out exactly what was intended? I believe, yes, Your Honor, it's one of the many things we're seeking discovery on. But I think that goes to the crux of creating the constitutionally protected property right, which we have adequately pled in our complaint. And the inferences should be drawn in our favor. And all allegations should be assumed to be true for the purposes of this stage of the proceeding. And I believe the district erred by not doing that, Your Honor. Okay, I have another question, and that is the pay schedules that are included in your appendix. When those pay schedules reflect the increases for each year. But I'm not clear exactly on when they were issued, the pay schedules. Were they issued in 2008 or were they issued each year? The salary schedules were issued in 2008, Your Honor, after the November 15, 2000 resolution 5707. Yeah. And those, and I appreciate the Honor getting right to it, but that is exactly what I'm here to stand before you to contend, is that these constitutionally protected property rights were earned. And this has been law in this country for over 130 years. And I know it's in the reply, the Fisk case from the Supreme Court in 1885, which is 116 U.S. 131. Which held that after services have been rendered under a law, statute, or ordinance, which fixes the rate of compensation, there arises an implied contract. It's, there has been, this case has not been questioned over 130 years. When a regulation rule or statute says this is when you're going to get paid, you then work for that time period of that salary increase and render services, that becomes your constitution protected property. This was followed by the Court of Claims in New York State. And I understand that's a lower court. But there is a case right on point, which is the Perricone case, which found it 91 missed second 823 in 1977. Which held it is offensive to the basic considerations of fairness and equity. To permit an employer, the state of New York in that case, which to retroactively deny compensation for services performed at its behest. It creates a quasi-contractual property right, which became vested based on the rendering of the service. Each and every day of those periods, in 2008, 09, 10, and 11, each day they went to work, they earned a little more of their constitution protected property. And the MC employees that completed those four years have a constitutional right to the wages they were promised. Which was not addressed in the district court's decision. I take it it's your position, though, that the fact that the payment was deferred, is not something that is within the general right of the executive director and the board. Before you get to the question of whether there's a property right. In other words, their deferral is not, it may be within their discretion, you're saying, but it's not the same thing as deferring the actual increases. And if they had said the increases will be deferred, then you really wouldn't be here. Is that what you're saying? Yes, your honor. Every case that was relied upon by the district court and my adversary were cases where it was a wage freeze. Before the salary was set, it's going to be X, and before it was earned, it was rescinded. This did not happen in this case, and I urge the court to look at the language in those resolutions, which were found in the appendix at 170, 172, and 175. I believe I'm out of time. Thank you. Thank you. Mr. Donovan, yes, you have reserved two minutes for rebuttal. Thank you. Ms. Bourassa. Thank you. Good morning, your honors, and may it please the court. This court should affirm the district court decision affirming the dismissal of plaintiff's complaint because plaintiffs lack an essential element of their remaining claims, a constitutionally protected property interest in the salary increases that they seek to be paid. This court has previously expressed misgivings about extending a constitutionally protected property right to collectively bargained salary levels for unionized public employees. This court has never held that non-unionized public employees have a constitutionally protected property right to a salary increase and should not do so here. Your adversary agrees with that. Your adversary agrees with that point. Your adversary says this goes beyond just the fact of a possible salary increase, but that once the salary was announced in 2008 and then the increases were scheduled and then people worked on them, worked with that in mind, but the payments were deferred. That sets this case apart from all the cases that you cite, which are when increases are deferred. He says the fact that if an increase had been deferred, that would have been simple. You win. But with the payment being deferred and the idea, the implication, of course, of that is the increases are in place. You can be credited with those, but the payment of those are going to be deferred. The word payment rather than increase was chosen for the deferral. That makes a difference, or at least it creates an ambiguity, which would warrant further development and discovery. If I may address that, Your Honor, the initial 2008 resolution set a July 1 effective date for each of the salary increases. As each July 1 rolled around, the payment would become effective. The 2009, 2010, and 2011 resolutions changed the effective date of the increase until such time as the executive director deems appropriate. So we believe that not only the payment, but also the effective time of the increases were deferred. But even— With respect to 2008. I apologize, Your Honor. Could you repeat? I believe you said 2009, 2010, and 2011. The resolutions that affected those or precluded those from taking effect were in the hands of the—put those in the hands of the director. What happened to 2008? Wasn't that—aren't those payments at issue? In 2008, the 2008 salary increases went into effect and the plaintiffs received those increases. That's undisputed. So the question is whether they were entitled to the additional increases that were— For 2009, 2010, and 2011. For 2009, 2010, and 2011. And before the July 1 effective date of each of those resolutions, the authority changed those resolutions by making the effective date, when the executive director deems appropriate, a wholly discretionary standard. Now, this court has— But he didn't use the words—I'm being particular about the language here. He didn't use the words that the effective date of the increase was going to be put off. He just said the payments shall be deferred. And that is what I—you know, that appears to be the language that's being used here. And that's—and that seems to be the sticking point. That's what this whole case is about. Were the increases in place, and did they stay in place, and just the payment was deferred, or were the increases deferred? Even if we assume, Your Honor, that only the payment was deferred, the payment was deferred indefinitely until such time as the executive director deems appropriate. And the plaintiffs do not allege in the complaint that at any time prior to 2015, when the salary increases were canceled, plaintiffs do not allege that the executive director ever made a determination that payment was appropriate. Had the complaint so alleged, had such an event even allegedly occurred, I would agree that plaintiffs would have an enforceable claim under state law, because the condition precedent for payment of the increases would have occurred. But that is not what's alleged in the complaint, and that's why there really is no plausible basis for plaintiffs to allege even an enforceable state law right to receive the increases, much less a constitutionally protected property interest. But I guess along the lines of what I think Judge Walker is asking you, how is the deferral of payment the same as the deferral of the increase? Because either way, Your Honor, the plaintiffs would not be entitled to payment. They would not be entitled to recover any relief in this action, unless and until the executive director issued a determination that payment was appropriate, or that payment and implementation of the salary schedules was appropriate. So under either interpretation of those resolutions, the plaintiff's right to actually be paid the salary increases could not attach, unless and until the executive director made a determination that it was appropriate to pay. Now that is a wholly discretionary standard that is not sufficient to create an enforceable express or implied contract right under New York state law. But even if such a contract right could attach under New York state law, that's only the first part of the analysis. This Court takes a two-step analysis in determining whether a property interest attaches. First is, do we have an interest under state law? And second is, does that enforceable state law interest rise to the level of a constitutionally protected entitlement? And this Court has never found that even unionized, has never expressly held that even unionized public employees have such a right. Certainly, this is not the appropriate case in which to reach such a holding. You're right about increases. When increases are deferred or when increases are withheld, that's a different story. This case is all about these particular facts and whether these facts distinguish all those cases that you cited, which dealt with withholding or deferring, putting off increases, as opposed to putting off payments of increases that were in place. And the question is, what reasonably would have been in the minds of the workers who were working in 2009, 10, and 11? Did they think that they were working for the 2008 salary, or did they think they were working for the scheduled increases as to which payment was being deferred? And that's another ambiguity that seems to me that we don't know. We don't have an answer to that. I don't know. I mean, they claim in their pleadings that they were earning the increases during that period of time. But, you know, this is a case that's very different from these other cases that you cited, in my view. And the rescission occurs in 2015. You know, why was that done so late in the game? And that's another question I have. Your Honor, if I can address the first point first, which was what did the plaintiffs anticipate or expect? According to the allegations of the complaint, which are accepted as true, the plaintiffs expected that they were earning and being paid their 2008 salaries. There's no question about that. And they allege that they were earning or relying on being paid the salary increases, either when the executive director determines appropriate, according to the language in the resolutions, or eventually, which is even more vague, according to the alleged oral promises in the complaint. Neither a promise to pay when the executive director deems appropriate, nor a promise to pay eventually, can give rise to an enforceable New York State contract right to the salary increases, and the right to- Under the implied contract theory. Under either an implied or an express contract theory, Your Honor. We believe that the cases we've cited establish that a municipal resolution setting compensation for public employees does not create any contract and can be prospectively changed, which is what happened here. But again, even if there was somehow an enforceable right under New York State law, then the question becomes whether the due process clause clothes that state law right with constitutional due process protection. And this court has never so held. In the Buffalo teacher's case, which is cited in the briefs, and also in Adams v. Swosey, which the plaintiffs cite, this court has expressed misgivings and has assumed without deciding that unionized public employees whose rights to a salary increase are memorialized in a bargained for collective agreement might have a protected property interest, although again, this court has never so held. Here, there is no collective bargaining right to these salary increases, no contractual basis for the salary increases, and no precedent in this court's history extending a constitutionally protected property right to receive salary increases for non-unionized employees. Thank you, Ms. Barraza. If I can make one more quick point before my time is up, I would just add that- Time is up. Oh. I apologize. Thank you. Mr. Donovan. Very briefly, Your Honor, the appellee in this case is attempting to confuse the matter talking about unionized employees, collective bargaining agreements. That has nothing to do with this case. This case is about an employer who said your salary is going to be X next year, doesn't rescind it, the year starts, and each and every day a property right attaches. But in connection with your salary is going to be X, they also passed a resolution, as I hear your adversary tell us. They passed a resolution which gave to the executive director the discretion to defer that payment, and as far as I can tell, but please, I was going to ask you this, ad infinitum. I mean, you and I and everybody in this room could be long gone, and the incoming executive director ultimately could make an award back which would devolve through the estates of the present employees, but is there anything that says that's going to happen in a particular period of time such that, if it does not occur, your employees can sue the executive director and say, we were to be paid in five years, now pay us. I understand that question, Your Honor, and it does leave a bit of an open-ended agreement here. If it's open-ended and there is no obligation to pay, what right do your clients have, do the plaintiffs in this case have, to seek that payment? Well, I respectfully disagree, Your Honor. It was earned, and they do have to pay it, and they only deferred the payment of. When? When? And that's not, at this point in time, that's not subject to this complaint. But if it's not subject of the complaint, why is it an enforceable right? Because the taking occurred on May 15th. So when you and I are long past, out of this world, the heirs of your employees can sue the New York Thruway Association and say, you know, Grandpa or Great Grandpa was entitled to that money, because I don't see anything that says he has to declare that payment to be made. I understand that it does create a bit of an issue, Your Honor, but it does not change the pleading standard and the fact that this case should have been decided in favor of the appellant, and the district court ignored the earned property rights, which have been conferred onto the employees, the major confidential employees. Thank you, Your Honor. Thank you. I'm sorry, Judge Walker has a question. I'm sorry, Judge. Is there, there's nothing in the complaint, is there, that indicates that what the intent was on the part of the board during this period after the deferrals occurred, was there any manifestation of payment or of desire that there was going to be a payment or anything of that sort, or was it just silence? Yes, Your Honor. It was alleged in the complaint and stated that senior executives at the Thruway Authority routinely inform the MC employees, who they work closely with every day, we are going to pay this, we do want to pay this. That's why we didn't defer the increase itself. Mrs. Liu's comments, which are in the complaint, state that these are hardworking people that work a lot more than 80 hours a day  There are many allegations in the complaint which establish the intent of the board and the board members to pay this for the hardworking employees of the Thruway Authority who have been denied their salary increase. And these deferred payments, I take it, were driven by the financial crisis of 2008. I assume so, Your Honor. There seem to be other cases that bear the same hallmarks. Yes. Okay. Thank you, Judge. Any questions? Thank you very much. Thank you, Ms. Barrasso. We'll defer decision.